1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARILYN GALAMAY ALACAR,              No.  2:22-cv-149-TLN-KJN

12              Plaintiff,                 FINDINGS AND RECOMMENDATIONS

13        v.                              (ECF Nos. 8, 14.)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits and Supplemental Security Income.[1]  In

19   her summary judgment motion, plaintiff contends the Administrative Law Judge erred in:

20   (A) failing to follow the orders of the Appeals Council; (B) resolving her subjective symptom

21   testimony; (C) resolving her disability claim at Step Five via the testimony of the Vocational

22   Expert.  Plaintiff seeks a remand for benefits or for further proceedings.  The Commissioner

23   opposed, and filed a cross-motion for summary judgment, and seeks affirmance.

24        For the reasons that follow, the court recommends plaintiff's motion for summary

25   judgment be DENIED; the Commissioner's cross-motion be GRANTED, and the final decision

26   of the Commissioner be AFFIRMED.

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for the entry of
     findings and recommendations.  See Local Rule 304.

                                           1

1    **I.       RELEVANT LAW**

2          The Social Security Act provides for benefits for qualifying individuals unable to "engage

3    in any substantial gainful activity" due to "a medically determinable physical or mental

4    impairment."  42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3).  An Administrative Law Judge ("ALJ") is

5    to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

6                    **Step one**: Is the claimant engaging in substantial gainful activity?  If so,
                 the claimant is found not disabled.  If not, proceed to step two.
7                    **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed
                 to step three.  If not, then a finding of not disabled is appropriate.
8                    **Step three**: Does the claimant's impairment or combination of
                 impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
9                Subpt. P, App. 1? If so, the claimant is automatically determined disabled.
                 If not, proceed to step four.
10                   **Step four**:  Is the claimant capable of performing past relevant work?  If
                 so, the claimant is not disabled.  If not, proceed to step five.
11                   **Step five**:  Does the claimant have the residual functional capacity to
                 perform any other work?  If so, the claimant is not disabled. If not, the
12               claimant is disabled.

13   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4);

14   416.920(a)(4).  The burden of proof rests with the claimant through step four, and with the

15   Commissioner at step five.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

16          A district court may reverse the agency's decision only if the ALJ's decision "contains

17   legal error or is not supported by substantial evidence."  Id. at 1154.  Substantial evidence is more

18   than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable

19   mind might accept as adequate to support a conclusion."  Id.  The court reviews the record as a

20   whole, including evidence that both supports and detracts from the ALJ's conclusion.  Luther v.

21   Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the court may review only the reasons

22   provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not

23   rely.  Id.  "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a]

24   review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

25          The ALJ "is responsible for determining credibility, resolving conflicts in medical

26   testimony, and resolving ambiguities."  Ford, 950 F.3d at 1154.  Where evidence is susceptible to

27   more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id.  Further, the

28   court may not reverse the ALJ's decision on account of harmless error.  Id.

1    **II.      BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

2            In November of 2017, plaintiff applied for Disability Insurance Benefits and

3    Supplemental Security Income, alleging an onset date of August 1, 2013.  (Administrative

4    Transcript ("AT") 368-81; 165)  Plaintiff claimed disability due to "diabetes with peripheral

5    neuropathy hands and feet; right and left shoulder bursitis; traumatic brain injury w/ impulsive

6    uncontrolled behavior; left sided weakness; depression; and anxiety."  (See AT 168.)  Plaintiff's

7    applications were denied initially and upon reconsideration, and she sought review with an ALJ.

8    (See AT 133-208; 258-59.)  At a March 2019 hearing, plaintiff testified about her conditions, and

9    a vocational expert ("VE") testified about available jobs.  (AT 61-114.)

10           On April 4, 2019, the ALJ issued her first decision determining plaintiff was not disabled.

11   (AT 212-24.)  Relevant here, the ALJ found:  (i-a) moderate, mild, or no paragraph B limitations

12   regarding plaintiff's mental impairments, limiting plaintiff to "non-complex and routine tasks"

13   (AT 215-17); (i-b) no visual limitations, as Dr. Chen's more-limiting opinion was unpersuasive

14   (AT 221); (i-c) no requirement plaintiff avoid moving machinery or unprotected heights, despite a

15   finding in a 2016 decision that plaintiff should do so; and (ii) plaintiff could work at three

16   different jobs in the national economy given her RFC.  (AT 223.)  Plaintiff appealed to the

17   Appeals Council, who vacated this first decision and remanded to the ALJ for further

18   consideration of certain issues, including:  (i) multiple opinions from plaintiff's medical sources,

19   as the Council found the ALJ's rationale "cursory, [with] no longitudinal discussion of the

20   impairments [or] rationale in weighing the opinions"; and (ii) plaintiff's ability to perform certain

21   jobs, as the Council noted there was an unresolved conflict between the VE's testimony and the

22   Dictionary of Occupational Titles and Selected Characteristics of Occupations.  (AT 231-34.)  On

23   remand, the ALJ held another hearing in November of 2020, where plaintiff and a VE again

24   testified.  (AT 37-60.)

25           On January 12, 2021, the ALJ issued a second decision determining plaintiff was not

26   disabled.  (AT 13-30.)  As an initial matter, the ALJ determined plaintiff met insured status

27   through December 31, 2018.  (AT 16.)  At step one, the ALJ concluded plaintiff had not engaged

28   in substantial gainful activity since August 7, 2013.  (Id.)  At step two, the ALJ determined

1    plaintiff had the following severe impairments:  diabetic retinopathy, diabetes mellitus, status post
2    cerebrovascular accident, bilateral shoulder impingement syndrome, adhesive capsulitis, major
3    depressive disorder, and general anxiety disorder.  (Id.)  At step three, the ALJ determined
4    plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  (Id.,
5    citing 20 C.F.R. Part 404, Subpart P, Appendix 1).  Relevant here, the ALJ noted records after
6    plaintiff suffered a stroke in December of 2013 indicated decreased hand strength, pain in the
7    shoulders affecting plaintiff's overhead reach, and decreased range of motion.  (AT 17.)
8    However, the ALJ also found that after plaintiff was discharged, she was independent in mobility,
9    ambulation, transfers, all self-care activities, and communication, and plaintiff's follow-up visits
10   showed normal or improved conditions.  (Id., citing multiple medical records.)  Also relevant
11   here, the ALJ noted that in May of 2019 Dr. Chen found 20/80 vision bilaterally and prescribed
12   glasses.  (Id., citing AT 1234.)  As to plaintiff's mental impairments, the ALJ found plaintiff
13   mildly impaired in two Paragraph B categories (her ability to understand, remember, or apply
14   information and to interact with others) and moderately impaired in the other two categories (her
15   ability to concentrate, persist, or maintain pace and manage herself).  (AT 18-19.)

16          The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light
17   work, except she "can frequently perform postural changes; can never climb ladders, ropes, or
18   scaffolds; can occasionally reach overhead bilaterally; cannot tolerate concentrated exposure to
19   hazards like moving machinery or unprotected heights; and can perform non-complex and routine
20   tasks."  (AT 19.)  In crafting this RFC, the ALJ summarized plaintiff's symptom testimony and
21   stated she considered those statements alongside the medical evidence and opinions of the
22   medical sources.  (Id.)  Relevant here, the ALJ noted medical records showing improvements to
23   plaintiff's grip strength and shoulder impairment in the years after the 2013 stroke (AT 20-21),
24   records of plaintiff's history of diabetic retinopathy (AT 22), and records concerning plaintiff's
25   (moderate) ability to concentrate, persist, or maintain pace and manage herself (AT 22-23).  The
26   ALJ compared her findings to those in a determination from an earlier disability period, noting
27   records showing improvements and degradations in plaintiff's limitations.  (AT 23-24.)  The ALJ
28   also weighed the medical opinions, finding:  (i) the PAMF opinions regarding plaintiff's mental

4

impairments partially persuasive, given other physicians found plaintiff to be not as limited;

(ii) the initial PAMF opinion regarding plaintiff's physical impairments partially persuasive,

given the degradation in plaintiff's ability to reach or lift; (iii) the reconsideration PAMF opinion

persuasive, as the "light work" findings were consistent with the medical record; (iv) Dr. Barron's

July 2018 opinion that plaintiff was moderately-to-severely impaired in the paragraph B

categories not fully persuasive to the extent the limitations were inconsistent with the other

medical opinions and the medical record: (v) Dr. Hidalgo's November 2017 findings of

"marked" mental limitations to be unsupported and inconsistent with the portions of Dr. Barron's

opinion; (vi) Dr. Notario's two "extreme" findings regarding plaintiff's physical limitations

unpersuasive as unsupported by his own exam findings and inconsistent with other evidence;

(vii) Dr. Chen's April 2018 opinion of significant visual impairment not persuasive as

unsupported by his records; and (viii) Dr. Kazmi's multiple limiting opinions regarding plaintiff's

physical and mental impairments not persuasive as unsupported and inconsistent with the record.

(AT 24-27.)

In conclusion, the ALJ found plaintiff was incapable of performing past relevant work as a

certified nurse assistant (SVP 4 medium, heavy as performed).  (AT 28.)  However, the ALJ

found there were jobs plaintiff could perform, such as an electronics worker, office helper, and

bench/small parts assembler; thus, the ALJ found plaintiff was not disabled.  (AT 29.)

Plaintiff again appealed to the Appeals Council, but this second appeal was rejected.  (AT

1-5.)  Plaintiff then filed this action requesting judicial review of the Commissioner's final

decision; the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 8, 14, 15.)

**III.    ISSUES PRESENTED**

Plaintiff contends the Administrative Law Judge erred in:  (A) failing to follow the orders

of the Appeals Council after her case was remanded the first time—specifically concerning her

mental impairments, visual limitations, and step five findings; (B) resolving plaintiff's subjective

symptom testimony concerning her ability to lift her arms, grip, shower, and ambulate without

getting dizzy or using a cane; and (C) resolving plaintiff's disability claim at step five, given the

RFC called for plaintiff to avoid moving machinery and work jobs with non-complex, routine

1  tasks, but the ALJ cited jobs that arguably require such tasks.  (ECF No. 8-1.)

2          The Commissioner disagrees, arguing the ALJ:  (A) properly followed the orders of the

3  Appeals Council in examining the persuasiveness of the medical opinions; (B) properly rejected

4  the more severe aspects of plaintiff's subjective symptom testimony; and (C) properly resolved

5  plaintiff's case at step five because "moving machinery" jobs were excluded by the VE, handheld

6  power tools are distinct, and the unskilled (SVP 2) office helper job was not in conflict with the

7  "non-complex and routine" limitation in the RFC.  Thus, the Commissioner contends the decision

8  as a whole is supported by substantial evidence and should result in affirmance.  (ECF No. 14.)

9          In reply, plaintiff focuses on (A) the language of the Appeals Council regarding her

10  mental and visual limitations; (B) the ALJ's resolution of her pain testimony; and (C) the

11  Commissioner's "power tools" vs. "moving machinery" argument, contending this is for the VE

12  to resolve.  Plaintiff requests a remand for benefits or for further proceedings.  (ECF No. 15.)

13  **IV.    DISCUSSION**

14      **A.  The court's review is of the ALJ's decision, not the Appeals Council's findings, and**

15          **the ALJ sufficiently resolved conflicts in the medical opinions.**

16          The undersigned begins by analyzing whether the focus should be on the ALJ's failure to

17  follow the Appeals Council's instructions or the ALJ's decision itself.  The court finds the latter

18  to be the appropriate focus.

19          The Appeals Council may remand a case to an ALJ where some additional evidence or

20  action is needed.  20 C.F.R. §§ 404.977, 416.1477.  The regulations require the ALJ "shall take

21  any action that is ordered by the Appeals Council and may take any additional action that is not

22  inconsistent with the Appeals Council's remand order."  Id. at sub. (b).  A federal agency is

23  obliged to abide by the regulations it promulgates.  See Vitarelli v. Seaton, 359 U.S. 535, 545

24  (1959).  However, as one district court recently noted, courts across the country differ on whether

25  an ALJ's compliance with an Appeals Council remand order is a proper subject on review at the

26  district court.  See Cathey v. Saul, 2021 WL 4129491, at *8 (S.D. Cal. Sept. 10, 2021) (citing

27  cases with various approaches).  Broadly speaking, 42 U.S.C. § 405(g) requires the court's review

28  to be of the final decision of the Commissioner.  See Ramirez v. Shalala, 8 F.3d 1449, 1451 (9th

Cir. 1993).  Highly persuasive here is the Ninth Circuit's unpublished decision in <u>Tyler v. Astrue</u>, wherein the panel found the lower court "properly declined to evaluate whether the ALJ's second decision satisfied the demands of the Appeals Council's remand."  305 Fed. App'x 331, 332 (9th Cir. 2008) (citing 42 U.S.C. § 405(g) and <u>Ramirez</u> for the proposition that a district court's jurisdiction extends only to the final decision of the Commissioner—the ALJ's decision)).

Given the statute's command and persuasive case rationales, the undersigned declines to engage with plaintiff's 'ALJ vs. Appeals Council' framing, instead focusing on the substance of the final decision of the ALJ.  <u>See, e.g.</u>, <u>Tyler</u>, 305 Fed. App'x at 332; <u>Cathey</u>, 2021 WL 4129491, at *8; <u>see also, e.g.</u>, <u>Walls v. Astrue</u>, 282 F. App'x 568, 571 (9th Cir. 2008) (focusing on the ALJ's failure to develop the record regarding plaintiff's mental impairments instead of plaintiff's argument that the ALJ failed to follow Appeals Council instructions); <u>Cathey</u>, 2021 WL 4129491, at *8.

Thus, as to the ALJ's January 12, 2021 decision, the questions presented by plaintiff are whether the ALJ properly resolved the opinions of:  (1) Drs. Barron and Hidalgo regarding plaintiff's mental health and (2) Dr. Chen regarding plaintiff's vision; and the question of whether the ALJ met her burden at step five regarding the VE's testimony and available jobs is addressed in Section C below.  (<u>See</u> ECF No. 8-1 at 4-5 (plaintiff's proffering of arguments as to these three issues only).)

**<u>Legal Standards – Medical Opinions and Persuasiveness</u>**

For applications filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ("PAMF") [i.e., state-agency medical consultants], including those from [a claimant's] medical sources."  <u>See</u> 20 C.F.R. § 404.1520c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness." § 404.1520c(a).  In determining how "persuasive" are the opinions of a medical source or PAMF, an ALJ must consider the following factors:  supportability, consistency, treatment relationship, specialization, and "other factors." § 404.1520c(b), (c)(1)-(5).

Despite a requirement to "consider" all factors, the ALJ's duty to articulate a rationale for

1    each factor varies.  § 404.1520c(a)-(b).  In all cases, the ALJ must at least "explain how he

2    considered" the supportability and consistency factors, as they are "the most important factors."

3    § 404.1520c(b)(2).  For supportability, the regulations state:  "[t]he more relevant the objective

4    medical evidence and supporting explanations presented by a medical source are to support his or

5    her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the

6    opinion or PAMF] will be."  § 404.1520c(c)(1).  For consistency, the regulations state:  "[t]he

7    more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

8    evidence from other medical sources and nonmedical sources in the claim, the more persuasive

9    [the opinion or PAMF] will be."  § 404.1520c(c)(2).  The ALJ is required to articulate findings on

10   the remaining factors (relationship with claimant, specialization, and "other") only where "two or

11   more medical opinions or prior administrative medical findings about the same issue" are "not

12   exactly the same," and both are "equally well-supported [and] consistent with the record."

13   § 404.1520c(b)(2)&(3).

14        An ALJ may address multiple opinions from a single medical source in one analysis.

15   § 404.920c(b)(1) ("source-level articulation").  "[I]n interpreting the evidence and developing the

16   record, the ALJ does not need to discuss every piece of evidence."  <u>Howard ex rel. Wolff v.</u>

17   <u>Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003)).

18        **<u>Analysis</u>**

19        1.  <u>Opinions Regarding Plaintiff's Mental Limitations</u>

20        Plaintiff's primary argument concerning the January 2021 decision focuses on the ALJ's

21   findings regarding the Paragraph B mental limitations, in that she contends the ALJ should not

22   have relied on "simplistic, vague statements" in resolving the conflicting medical opinions.  (ECF

23   No. 8-1 at 4.)  The ALJ's found that the more-serious limitations expressed by Drs. Barron and

24   Hidalgo regarding her social limitations were "not consistent with [the doctors'] observations of

25   normal cooperation, politeness, affect, speech, and thought content."  (See <u>Id.</u>, citing AT 24.)

26   Plaintiff contends this statement fails to articulate the differences in the kinds of interactions she

27   had between her "long-term doctors whom she is comfortable with" and "unfamiliar people in a

28   stressful work environment."  (See <u>Id.</u>)  Plaintiff proffers this same argument in her reply brief,

8

and additionally challenges the ALJ's finding that plaintiff "reported good relationships with her family."  (ECF No. 15 at 3, citing AT 18.)  Though the decision does include these arguably-vague statements, the court finds the ALJ sufficiently articulated her rationale throughout the decision, supported by citations to the medical record, to overcome a substantial evidence review regarding plaintiff's mental impairments.

At step two, the ALJ found plaintiff to have the severe impairments of major depressive disorder and general anxiety disorder.  (AT 16.)  Regarding plaintiff's ability to interact with others, the ALJ found plaintiff mildly impaired.  (AT 18.)  The ALJ based this determination on notes from Dr. Hidalgo's examinations between September of 2017 and September of 2020 (AT 749-58; 946-50;1249-54), one of Dr. Barron's exams (AT 763), plaintiff's report to Dr. Kazmi of improved mood on medication (AT 691) and her reports of good relationships with her family (AT 1253).  Given these findings, the ALJ found Dr. Hidalgo's assessment of "moderate" social limitations (AT 849, a November 2017 opinion) and his "marked" limitations in social skills, (AT 1226, an August 2020 opinion) to be unsupported by his own treatment records and inconsistent with the findings noted after Dr. Barron's exam.  Similarly, Dr. Barron's moderate limitations in this functional area were rejected as unsupported by his exam notes and Dr. Hidalgo's longitudinal records (See AT 764).  Also similarly, the ALJ was unpersuaded by Dr. Kazmi's assessment of "marked" interactive limitations based on his own findings and the records cited in the Paragraph B analysis, as well as his lack of specialty in treating mental impairments (as a neurologist) and mere transcription of plaintiff's subjective statements into his notes.  (AT 27.)  This articulation demonstrates the ALJ did not just rely on blanket statements as plaintiff contends, but considered the weight of the evidence in the record and resolved the apparent conflicts in the doctors' opinions.  That is what the regulations and applicable case law requires.  See 20 C.F.R. § 404.1520c(b)(2) (requiring the ALJ to explain how the supportability and consistency factors are applied in resolving the opinions of medical professionals, as they are "the most important factors"); Ford, 950 F.3d at 1154 (reminding that the ALJ "is responsible for . . . resolving conflicts in medical testimony . . .").

Though plaintiff appears to concentrate solely on the ALJ's resolution of her social

9

limitations (ECF No. 8-1 at 4), the undersigned notes the same sufficiency of articulation in the remaining Paragraph B categories.  Regarding plaintiff's ability to adapt or manage herself, the ALJ found plaintiff moderately impaired, basing this on Dr. Hidalgo's longitudinal treatment records, plaintiff's stabilized mood on medication, lack of inpatient treatment, decompensation, or conflicts with others, and lack of other evidence supporting a more severe limitation.  (See AT 18-19, citing AT 691; 749-58; 946-51; 1249-54).  The ALJ found unpersuasive Dr. Hidalgo's "25% off task" and work-absence opinion from November 2017, as well as the assignment of "marked" limitations in this category from Dr. Hidalgo's August 2020 opinion and Dr. Kazmi's June 2018 opinion.  (AT 25, 26-27.)  As to the other two Paragraph B categories, the ALJ found plaintiff mildly impaired in her ability to understand, remember, or apply information; moderately impaired in her ability to concentrate, persist, or maintain pace; and assigned an RFC limiting plaintiff to non-complex and routine tasks.  (AT 18.)  The ALJ again cited to Dr. Hidalgo's own treatment notes and Dr. Barron's exam findings for support.  (Id.)  In rejecting Dr. Barron's severe assessment in these two categories and Dr. Hidalgo's August 2020 "marked" findings, the ALJ again cited to the medical record, finding lack of support and inconsistency with each of the doctors' actual treatment records.  (AT 25, citing AT 749-58, 763, 946-51, 1250.)  For the same reasons as with the ALJ's resolution of the social-interaction category, the ALJ has sufficiently articulated a rationale on supportability and consistency to demonstrates a resolution of conflicts in the record between these doctors' opinions and the treatment notes.  20 C.F.R. § 404.1520c(b)(2); Ford, 950 F.3d at 1154.[2]

---

[2]  In addition to focusing on Drs. Barron and Hidalgo in this section of her brief, plaintiff makes the blanket argument that "the ALJ uses the exact same sort of simplistic statements to reduce or discredit all of plaintiff's treating physician's opinions as to her limitations"  (ECF No. 8-1, citing AT 28-32.)  To the extent this single sentence is intended to be an argument regarding the ALJ's findings on the remainder of plaintiffs' doctors' opinions—of which there are many—plaintiff has not set forth sufficient evidence or argument for the court to substantively rule on these issues given the constraints of Section 405(g).  See Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994) (reviewing court will "review only issues which are argued specifically and distinctly"); see also United States v. Graf, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived"); Fondell v. Berryhill, 2018 WL 2181624, at *4 (W.D. Wash. May 11, 2018) (court could not find error based on "vague  and nonspecific argument"); Hilt-Hayden v. Comm'r, 2016 WL 3396937, at *5 (D. Or. June 14, 2016) (same).

2.   Dr. Chen's Opinion Regarding Plaintiff's Visual Limitations

In addition to the ALJ's resolution of the mental impairments, plaintiff challenges the decision's treatment of her asserted visual limitations.  (ECF No. 8-1 at 4.)  Plaintiff contends the ALJ ignored her complaints of blurred vision, near and far sight at a September 2020 exam, and her 20/100 and 20/200 glare testing with Dr. Chen in May of 2019.  (See AT 1230-46.)

The ALJ found plaintiff's diabetic retinopathy to be a severe condition, noting that in May of 2019 Dr. Chen observed 20/80 vision bilaterally and prescribed glasses.  (AT 17, citing AT 1233.)  In resolving the medical records regarding plaintiff's diabetic condition, the ALJ did in fact note Dr. Chen's glare testing in May of 2019 as well as plaintiff's reports of blurred vision in September of 2020.  (AT 22.)  The ALJ also noted Dr. Chen's diagnoses, advisement of six month checkups, followed by three month checkups advised in 2020 for corrections.  (Id., citing AT 922, 1233, 1235.)  Later in the decision, the ALJ summarized Dr. Chen's treatment recommendations and found his 20/80 test results and plaintiff's complaints did not warrant limitations beyond the avoidance of hazards in the workplace (accounted for in the RFC).  (AT 26.)

The ALJ's findings are sufficient under the regulations, as the resolution of Dr. Chen's treatment plan articulated at AT 26 and the records cited at AT 17 and 22 make clear the ALJ's rationale.  Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").  This rationale is that plaintiff is note significantly limited by her visual impairments, given the evidence in the record and lack of support for more restrictive limitations.  Ford, 950 F.3d at 1154 (reminding that the ALJ "is responsible for . . . resolving conflicts in medical testimony . . ."); see also 20 C.F.R. § 404.1546(c) (assigning responsibility for assessing the RFC at the hearing stage to the ALJ); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (noting that an ALJ may synthesize and translate assessed limitations into an RFC assessment without repeating each functional limitation verbatim in the RFC assessment); Howard, 341 F.3d at 1012 ("[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.").

11

1    **B. The ALJ appropriately rejected the severe aspects of plaintiff's symptom testimony.**

2    **Legal Standards**

3    In evaluating the extent to which an ALJ must credit the claimant's report of their

4    symptoms, the Ninth Circuit has stated:

> First, the ALJ must determine whether the claimant has presented objective
> medical evidence of an underlying impairment which could reasonably be
> expected to produce the pain or other symptoms alleged. In this analysis, the
> claimant is not required to show that her impairment could reasonably be
> expected to cause the severity of the symptom she has alleged; she need only
> show that it could reasonably have caused some degree of the symptom. Nor must
> a claimant produce objective medical evidence of the pain or fatigue itself, or the
> severity thereof.
> If the claimant satisfies the first step of this analysis, and there is no evidence of
> malingering, the ALJ can reject the claimant's testimony about the severity of her
> symptoms only by offering specific, clear and convincing reasons for doing so.
> This is not an easy requirement to meet: The clear and convincing standard is the
> most demanding required in Social Security cases.

12   Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014-15).

13   The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony

14   must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not

15   arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th

16   Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)).  Examples of

17   "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective

18   symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of

19   medical treatment, prescription of conservative treatment, inconsistencies between a claimant's

20   testimony and conduct (including daily activities), and whether the alleged symptoms are

21   consistent with the medical evidence of record.  See Tommasetti, 533 F.3d at 1040; Lingenfelter

22   v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007).  A lack of corroborating, objective medical

23   evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms;

24   however, it is a factor the ALJ may consider.  See Rollins, 261 F.3d at 857 (citing 20 C.F.R

25   § 404.1529(c)(2)).  A claimant's statements of subjective symptoms alone are insufficient

26   grounds to establish disability.  20 C.F.R § 404.1529(a).  If an ALJ was required to believe every

27   allegation of pain or impairment, disability benefits would run afoul of the Social Security Act

28   and its purpose.  See Treichler, 775 F.3d at 1106.

1          **Analysis**

2          Here, plaintiff contends the ALJ failed to meet the Ninth Circuit's clear and convincing

3     standard for resolving her pain testimony specifically concerning her ability to lift her arms,

4     shower without help, dress herself, walk without the use of a cane, grab objects and use her

5     hands.  Plaintiff contends the ALJ rejected the more severe aspects of her pain testimony solely

6     on the grounds that the medical evidence did not support such allegations of disabling pain.

7     Specifically concerning the cane, plaintiff argues the ALJ omitted any discussion of her asserted

8     need for the cane, the use of which was discussed by Dr. Notario.  (ECF No. 8-1 at 6-7.)

9          To be sure, the medical evidence carries a great deal of weight in the ALJ's resolution of

10    plaintiff's pain testimony.  In the discussion at step three, the ALJ thoroughly details plaintiff's

11    medical history concerning her hand strength, mobility and ambulation, self-care activities,

12    shoulder strength and range of motion, ability to reach overhead.  (See AT 17, citing multiple

13    medical records.)  After summarizing plaintiff's testimony at both hearings (AT 20), the ALJ

14    expounded on her summary of the medical record concerning plaintiff's asserted physical

15    limitations, including the after-effects of her 2013 stroke, her decreased ability to use her shoulder

16    starting in 2017, and her physicians' findings from 2017-2020.  (AT 20-22.)  Then, after

17    summarizing plaintiff's daughter's report, the ALJ concluded the reports in the medical record

18    did not support plaintiff's more-extreme assertions.  This included Dr. Notario's normal

19    examinations of plaintiff's feet, the normal findings after Dr. Kazmi's strength test of plaintiff's

20    hands, and Dr. Ferrar's normal upper extremity motor signs  (AT 23, citing AT 1089-139, 1163.)

21    The ALJ did note a change from the prior decision regarding plaintiff's ability to reach overhead

22    and plaintiff's complaints of dizziness respecting a heel-toe walk test.  (See AT 24.)  However,

23    the ALJ also noted Dr. Kazmi's 2020 finding of "okay" coordination and ambulation, as well as

24    records from 2019-20 showing normal balance, gait, and gross motor and sensory function in her

25    legs.  (Id., citing AT 1133, 1163.)  Finally, the Commissioner is correct that the ALJ did in fact

26    consider the medical evidence about plaintiff's asserted need for a cane, rejecting Dr. Notario's

27    extreme standing, walking, and schedule limitations as unsupported by his normal examinations

28    and inconsistent with other medical evidence.  (AT 26.)

1    The above citations and reliance on the medical record is a factor the ALJ was permitted

2    to consider when resolving plaintiff's pain testimony.  Rollins, 261 F.3d at 857.  However, as

3    both parties are aware, it is not the only factor an ALJ can rely on.  See Id. (noting a lack of

4    corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a

5    claimant's subjective symptoms).  The question is whether the ALJ provided additional reasons to

6    support her finding that plaintiff's "statements concerning the intensity, persistence and limiting

7    effects of these symptoms are not entirely consistent with the medical evidence and other

8    evidence in the record."  (AT 20.)  The undersigned finds the ALJ fulfilled her duty in this regard.

9    Regarding plaintiff's asserted inability to lift her arms, the ALJ noted what limitations she

10   did have improved with physical therapy.  (AT 21, citing AT 669.)  The ALJ noted plaintiff's

11   prior stated ability to perform care, contrasted with her asserted inability at the hearing to shower

12   without help or dress herself.  (AT 21, citing AT 767.)  The ALJ noted improvement in plaintiff's

13   ability to ambulate, move with coordination, balance after her stroke and continuing through

14   2020.  (AT 21, citing AT 647, 692, 878, 1037-39, 1133, and 1153-98.)  Plaintiff's grip strength

15   appeared fair after her stroke, but she was given occupational therapy and appeared to normalize

16   quickly and remain consistent through 2020.  (AT 21-22, citing AT 1022, 1163).  The ALJ's

17   recognition of plaintiff's conservative treatment of her conditions and inconsistencies with prior

18   statements for these conditions suffice as additional reasons why the ALJ could reject plaintiff's

19   more-severe pain testimony.  See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable

20   response to conservative treatment undermines complaints of disabling symptoms); Parra v.

21   Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of

22   conservative treatment is sufficient to discount a claimant's testimony regarding severity of an

23   impairment"); Fair v. Bowen, 885 F.2d 597, 604 n. 5 (9th Cir.1989) (explaining that the ALJ may

24   employ ordinary techniques of credibility evaluation and may take into account prior inconsistent

25   statements or a lack of candor by the witness); see also 20 C.F.R § 404.1529(a) (instructing that a

26   claimant's statements of pain or other symptoms alone are insufficient grounds to establish

27   disability).  For these reasons, the undersigned finds no error in the ALJ's resolution of plaintiff's

28   subjective symptom testimony.

**C.  The ALJ cited to jobs in sufficient numbers in the national economy at step five.**

**Legal Standards**

The Ninth Circuit has set forth the process by which the Commission is to meet its burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] identified limitations." Zavalin v Colvin, 778 F.3d 842 (9th Cir. 2015) (citing Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) and 20 C.F.R. § 440.920(g)).  At step five, the ALJ is to consider potential occupations the claimant may be able to perform based on the claimant's RFC, defined as the most that a claimant can do despite "physical and mental limitations" caused by her impairments and related symptoms. Id. at 845 (citing 20 C.F.R. § 416.966).

For occupations, the ALJ may rely on the Dictionary of Occupational Titles, the SSA's "primary source of reliable job information" regarding jobs that exist in the national economy, as well as testimony from vocational experts, who can speak to specific occupations that a claimant can perform in light of the RFC. Id. at 845-46 (citing 20 C.F.R. §§ 416.969, 416.966(d)(1) and (e); Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009); Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990)).  "When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." Zavalin, 778 F.3d at 846 (citing Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007)).  The Commissioner bears the burden at step five. Ford, 950 F.3d at 1148.

**Analysis**

Here, the ALJ found plaintiff had the residual functional capacity to perform light work, but as is relevant here, could not "tolerate concentrated exposure to hazards like moving machinery" and could only "perform non-complex and routine tasks." (AT 19.)  Based on this RFC, as well as plaintiff's age, education, and work experience, the ALJ found plaintiff could perform the occupations of:  (1) Electronics Worker (DOT # 726.687-010) with estimates of 20,000 jobs nationally; (2) Office helper (DOT # 239.567-010) with estimates of 72,000 jobs

15

nationally; and (3) Bench/small parts assembler (DOT # 706.684-022) with estimates of 230,000 jobs nationally.  The ALJ stated she relied in part on the VE's testimony because of plaintiff's limitations beyond the "light work" designation.  (AT 29.)  Plaintiff contends the ALJ's reliance on these three occupations was in error given the specific restrictions assigned in her RFC and the requirements of those occupations as described in the DOT.  (ECF Nos. 8-1, 15.)

Plaintiff first argues that because her RFC restricted her from working with "hazards like moving machinery," and the DOT description for both Electronics Worker and Bench/Small Parts Assembler includes working with moving machinery, these jobs could not be cited as available work.  See ECF No. 8-3 (DOT Description for Electronics Worker, which requires using "power tools and equipment"); ECF No. 8-5 (DOT Description for Assembler, Small Products, which requires using "handtools or portable powered tools" and other machines "such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines").  The Commissioner argues no conflict actually exists because even though these DOT descriptions do require the use of simple machines, the ALJ was permitted to rely on the VE's testimony that the Electronics Worker and Assembler jobs were available given plaintiff's RFC (including the requirement that moving machinery be avoided).  The Commissioner points to the fact that at the hearing, the VE indicated other jobs with conveyors or other "moving machinery" would be eliminated based on plaintiff's RFC.  (AT 56-57.)  Thus, the Commissioner appears to conclude that the court should infer that the Electronics Worker and Assembler jobs do not require work with "hazards like moving machinery," given the logical difference between a conveyor belt, which "move independently of the operator," and hand tools and power tools, which would be under plaintiff's control.  (ECF No. 14-1 at 14.)  Plaintiff replies that this inference is unfounded, or even if logically sound, is one for the ALJ to specifically state in the decision.  The court concurs with plaintiff on this point.  The Ninth Circuit has made clear it is for the ALJ, not the court, to "resolv[e] ambiguities."  Ford, 950 F.3d at 1154.  While an ALJ might draw the same conclusion as argued by the Commissioner, this should be stated in the decision.

However, the court may not reverse the ALJ's decision on account of harmless error, and the ALJ's failures regarding the Electronics Worker and Assembler positions is just that.  Ford,

950 F.3d at 1154.  Setting aside those jobs, the ALJ found plaintiff could also perform the

occupation of an Office Helper, with an estimated 72,000 jobs available nationally.  (AT 29.)

This occupation satisfies the threshold standard set in this district.  See, e.g. Gutierrez v. Comm'r

of Soc. Sec., 740 F.3d 519, 527-29 (9th Cir. 2014) (finding 25,000 jobs nationally to be a

significant number of jobs).  Plaintiff argues Office Helper cannot be relied upon because her

RFC restricts her to "non-complex and routine tasks."  See ECF No. 8-4 (DOT Description for

Office Helper, a job where one "[o]pens, sorts, and distributes incoming mail, and collects, seals,

and stamps outgoing mail. Delivers oral or written messages. Marks, tabulates, and files articles

and records.").  However, as the Commissioner notes, Office Helper is classified as a Specific

Vocational Preparation Level 2, which corresponds with simple, non-complex, routine work.  20

C.F.R. §§ 404.1568(a), 416.968(a); SSR 83-10 ("Unskilled work is work which needs little or no

judgment to do simple duties that can be learned on the job in a short period of time."); cf. also,

e.g., Zavalin, 778 F.3d at 846-47 (finding an apparent conflict between the Level 3 reasoning

requirement and limitations to non-complex tasks); with, e.g., Ebony B. v. Berryhill, 2019 WL

1296875, at *3 (C.D. Cal. Mar. 21, 2019) (noting courts in the Ninth Circuit have found no

meaningful distinction between "simple tasks "and "non-complex tasks" at SVP Level 2).

**V.     CONCLUSION AND RECOMMENDATIONS**

      Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by

substantial evidence in the record as a whole.  Ford, 950 F.3d at 1148 (noting that a district court

may reverse only if the ALJ's decision "contains legal error or is not supported by substantial

evidence").

      Accordingly, IT IS HEREBY RECOMMENDED that:

      1.     Plaintiff's motion for summary judgment (ECF No. 8) be DENIED;

      2.     The Commissioner's cross-motion (ECF No. 14) be GRANTED;

      3.     The final decision of the Commissioner be AFFIRMED; and

      4.     The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to

the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after

being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  December 2, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE